THE STATE v. WALKER, *Appellant*.

**Continuance.** Under ordinary circumstances this court will not interfere with the exercise by the trial court of its discretion in refusing continuances. But in the present case, it appearing by the affidavit of the officer, that after he had served two subpœnas on the witnesses needed for the defense, both at the same term of court, they had secreted themselves to avoid attachment, a conviction of murder was set aside, notwithstanding the record showed that the defendant had previously had a number of continuances. This result was the more readily reached because the court, upon examination of the evidence, was impressed with the belief that the jury had been influenced by political party feeling in finding their verdict.

*Appeal from Scott Circuit Court.*—HON. D. L. HAWKINS, Judge.

*B. B. Cahoon, Bedford & Keaton* and *Chas. E. Moss* for appellant.

*J. L. Smith,* Attorney-General, for the State.

HENRY, J.—The defendant was indicted at the December term, 1872, of the Stoddard circuit court, for the murder of one William Conner. The indictment was for murder in the second degree. At the September term, 1873, the cause was continued on defendant's application. At the December term, 1873, it was continued by general

order.    At the June term, 1874, the December term, 1874, and the March term, 1875, it was continued on defendant's application, and at the August term, 1875, there was a change of venue awarded to Scott county.    At the October term, 1875, of the Scott circuit court, defendant again applied for a continuance, which was refused, and the trial proceeded, and resulted in defendant's conviction of murder in the second degree, and his sentence to the penitentiary for a term of ten years.    From that judgment he has prosecuted his appeal to this court.

In his affidavit for a continuance on his last application, he stated the facts which he expected to prove by William Knox, Samuel Montgomery and one Terry, of Stoddard county, who were duly summoned as witnesses in his behalf, but were not in attendance ; that on the second day of the term, finding that the subpœna had not been returned, he caused another to be issued requiring them to appear forthwith, and had it served upon them, but, learning that the first had been returned, he procured an attachment against them, which, when his application for a continuance was made, had not been returned; that the witnesses resided within thirty-eight miles of the county seat of Scott county. The return of the officer, to whom they were delivered, showed that the subpœnas were served as stated in the defendant's affidavit.    The officer who had the attachment to serve stated in his affidavit that after the service of the second subpœna, "the witnesses had secreted themselves to avoid service of the attachment."

That the defendant used all the means in his power to procure the attendance of the witnesses is beyond question. It was his first application for a continuance after the removal of the cause to Scott county.    That removal necessarily made it somewhat more difficult to procure the attendance of the witnesses who resided in Stoddard where the difficulty occurred.    The affidavits of himself and attorney, and others, showed that the witnesses were material, and yet, while defendant was on trial for an alleged

crime, on conviction of which he would be deprived of his liberty and utterly ruined, these witnesses, to avoid attending and testifying in his behalf, for days concealed themselves in the swamps of Stoddard county.

Under ordinary circumstances, we would not interfere with the exercise of its discretion by the trial court in refusing a continuance, especially when as many had been granted as were procured by defendant in this case, but a careful examination of this record produces an apprehension that injustice to the defendant may have resulted from the refusal to grant the continuance.

We admit that the impression made upon our minds by the evidence in the cause, has contributed to produce the opinion we entertain, that the ends of justice would have been subserved by granting the continuance. An old man, near sixty years of age, paralyzed in one-half of his body, is set upon by four young men in the vigor of manhood, denounced by them for his political opinions, damned as a radical, with threats against his life. Availing himself of the first opportunity, he left the saloon to avoid them, stole quietly away; but bent upon mischief, they followed him to a drug store, where he had gone to purchase some tobacco. He left the drug store and again they followed, denouncing and cursing him as a d—d Republican son of a b—h. His son, who by this time had fallen in with the old man, remarked that they must not so abuse his father, and that he would take his part. The son and the deceased then got into a fight. The son disengaged himself and ran from the deceased, who, then approaching the old man, was by him fired upon and killed. We think that this case would be better considered by a jury on another trial. We have an impression—it is forced upon us by the evidence, that political party feeling had more influence in the conviction of this old man by the jury, than is allowable in judicial proceedings. At all events, his incarceration in the penitentiary, for a term of ten years, if another jury should pass upon his case on a fair trial, and

say that he deserves that punishment, would leave less room for apprehension that his imprisonment was unmerited, than if he be compelled to suffer that punishment on the verdict and judgment already rendered against him.

The judgment is reversed and the cause remanded. All concur.

REVERSED.